IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEFFREY PAUL SOUSA,            )
                               )
            Plaintiff,         )
                               )
    v.                         )    No. 10 C 6040
                               )
ASTRA ZENECA PHARMACEUTICAL    )
INC.,                          )
                               )
            Defendant.         )

MEMORANDUM OPINION AND ORDER

This pro se action by Jeffrey Paul Sousa ("Sousa") was originally filed in the Circuit Court of Vermilion County, Illinois (Sousa is a prisoner serving time at the Danville Correctional Center, which is located in Vermilion County). AstraZeneca Pharmaceuticals LP ("AstraZeneca," mistakenly named in Sousa's Complaint as "Astra Zeneca Pharmaceutical Inc.") filed a notice of removal ("Notice") to bring the action before the United States District Court for the Central District of Illinois. That court has in turn promptly transferred the action to this District Court for the Northern District of Illinois, and the action has been randomly been assigned to this Court's calendar.

This Court always heeds the admonition stated succinctly nearly a quarter century ago in Wis. Knife Works v. Nat'l Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986):

> The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

Indeed, Wernsing v. Thompson, 423 F.3d 732, 743 (7th Cir. 2005) (internal citations and quotation marks omitted) has more recently mandated:

> Jurisdiction is the power to declare law, and without it the federal courts cannot proceed. Accordingly, not only may the federal courts police subject matter jurisdiction sua sponte, they must.

In this instance that threshold scrutiny has disclosed a truly fascinating jurisdictional problem.

In filing the Notice on its own, AstraZeneca has ignored the other defendants whom Sousa expressly targeted in his Complaint. Essentially Sousa's allegations are that when he was in custody at the Cook County Department of Corrections ("County Jail"), he and other inmates were made the subjects of a two-year clinical study involving an AstraZeneca product, the psychotropic medication Seroquel (as Sousa alleges, he was "prodded into" participation in that "select class study").[1] Sousa's ingestion of that medication in the course of that study assertedly inflicted an entire battery of dire consequences on him, and so he has sued both AstraZeneca and its on-site employees who administered the study with "a blatant disregard for the health

---

[1] Sousa asserts that the County Jail medical administrators were "manipulated" into allowing the study "by enticements and inducements concerning free medication and other perks for converting select individuals for a case study on their product, Seroquel, and this plaintiff became one victim of this study."

2

and safety of their former medication user."[2]

Needless to say, Sousa understandably does not know the identity of those employees, and his obvious lack of mobility as a prison inmate precludes him from learning that identity except through discovery. That being the case, he drafted his case caption by following the AstraZeneca name with "its employees X, Y, Z et al., (unnamed defendants at present)." And that in turn makes it necessary to take a look at the 1988 amendment to 28 U.S.C. §1441,[3] part of the chapter of Title 28 dealing with removal, which added the following sentence to Section 1441(a):

> For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

As stated in 16 Moore's Federal Practice §107.14[2][c][iii] at 107-54 to 107-55 (3d ed. 2010), that amendment was adopted to override the en banc decision in Bryant v. Ford Motor Co., 844 F.2d 602 (9th Cir. 1987), which had adopted an across-the-board position that a district court lacked subject matter jurisdiction because of the presence of Doe defendants at the time of a case's removal from the state court. It had been the common practice of lawyers in some states (of which California was the most

---

[2] It is obvious, but should be made clear at this point, that this Court expresses no view as to the substantive viability of Sousa's charges.

[3] All further references to Title 28's provisions will simply take the form "Section--."

conspicuous example) to stick one or more "Doe" defendants into a complaint pretty much as a matter of course, whether or not there was a realistic prospect of injecting a real party into the lawsuit at a later date--somewhat in the nature of Dickens' description of Mr. Macawber's favorite expression: "In case anything turned up."

Our own Court of Appeals has spoken instructively on that subject in Howell by Goerdt v. Tribune Entertainment Co., 106 F.3d 215, 218 (7th Cir. 1997):

> States often allow a plaintiff to name an unknown party as an additional defendant. E.g., Wis. Stat. §807.12; Carol M. Rice, "Meet John Doe: It Is Time for Federal Civil Procedure to Recognize John Doe Parties," 57 U. Pitt. L. Rev. 883, 892 n. 27 (1996). For that matter, so does federal law in a suit based on the federal question jurisdiction, see, e.g., Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which does not depend on the parties' addresses. But because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, "John Doe" defendants are not permitted in federal diversity suits. Moore v. General Motors Pension Plans, 91 F.3d 848, 850 (7th Cir. 1996)(per curiam); United States Fire Ins. Co. v. Charter Financial Group, Inc., 851 F.2d 957, 958 n. 3 (7th Cir. 1988); 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure §3642, pp. 144-46 (2d ed. 1985).

Indeed, in that last respect the opinion might well have added a reference to this Court's opinion in John Hancock Mut. Life Ins. Co. v. Central Nat'l Bank in Chicago, 555 F.Supp. 1026 (N.D. Ill. 1983), which was one of the earliest cases that rejected a purported diversity action on that basis.

It is more than interesting to note that the cases that allow removal based on the earlier-quoted last sentence of Section 1441(a) quite consistently speak of <u>fictitious defendants</u>, rather than of real defendants about whom everything is known except their names--see, e.g., <u>Australian Gold, Inc. v. Hatfield</u>, 436 F.3d 1228, 1235 (10th Cir. 2006) and <u>Casas Office Machines, Inc. v. Mita Copystar Am., Inc.</u>, 42 F.3d 668, 674-75 (1st Cir. 1994); cf. <u>McPhail v. Deere & Co.</u>, 529 F.3d 947, 951 (10th Cir. 2008)).[4] And that is so even though the literal statutory language is "defendants sued under fictitious names."

Under ordinary circumstances, where the potential injection of expressly identified defendants' names to supplant the currently unknown names is uncertain, or where there is any material question whether a putative defendant would really throw a monkey wrench into the diversity of citizenship machine as and when identified, this Court would be inclined to read the statutory language in its literal (and broadest) sense. But this is not at all an ordinary circumstance: There is no question from Sousa's allegations that real persons are involved, though spoken of as "X, Y and Z" in the case caption. And given their role as administrators of an ongoing study over a two-year

---

[4] In somewhat the same vein, <u>Howell by Goerdt</u>, 106 F.3d at 218 went on to refer to "John Does" who "are merely nominal parties" as the obvious exception to what was said in the earlier-quoted language.

5

period, it is extraordinarily unlikely that not one of them would share Sousa's Illinois citizenship--and if even one of them was in fact an Illinois citizen, that would of course destroy diversity.

It must also be remembered that by definition AstraZeneca <u>knows</u> the identity of its employees who carried out that responsibility (as Sousa does not). AstraZeneca must be well aware that its identification to Sousa of those individuals, with his consequent naming of them in his complaint, will almost surely destroy diversity and thus force the case to be shipped back to its place of origin in the Vermilion County state court in all events. But the critical factor for present purposes is that AstraZeneca bears the burden of demonstrating the existence of jurisdiction, and the Notice has not done so.

Under all of the circumstances, although there is certainly ample room for debate on the subject, this Court is of the view that under the special situation in this case the Section 1441(a) amendment may be viewed as ambiguous--as having focused on fictitious defendants (the real target of the legislation). And there is no question that the AstraZeneca employee-defendants are <u>not</u> fictitious. Indeed, some other courts have acted on just such an approach, ordering a remand in similar circumstances (see, e.g., <u>Wright v. Sterling Investors Life Ins. Co.</u>, 747 F.Supp. 653, 655 (N.D. Ala. 1990)).

All of that being so, in the language of Section 1447(c) "it appears that the district court lacks subject matter jurisdiction." This Court accordingly orders the case remanded to the Circuit Court of Vermilion County pursuant to the mandate in Section 1447(c), and the Clerk is ordered to mail a certified copy of the order of remand forthwith.

_____
Milton I. Shadur
Senior United States District Judge

Date:  Sepember 24, 2010